UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN CHRISTOPHER TROYER,

Plaintiff,

v.

UNKNOWN PARTY #1 et al.,

Defendants.

Case No. 1:26-cv-846

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about

which he complains, however, occurred at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. Plaintiff sues MDOC Healthcare Services, Unknown Party #1 (described as a doctor at MTU), and Doctor Unknown Party #2 (described as a doctor at the outside hospital where Plaintiff had surgery). (Compl., ECF No. 1, PageID.1–2.)

Plaintiff alleges that on or about May 20, 2022, he submitted a healthcare kite because he was having "serious pains in [his] groin area," and could not "stand up straight or sit without deep pains."[1] (*Id.*, PageID.3.) On May 23, 2022, Plaintiff was examined by MTU's "medical doctor and nurses," and was informed that he "was suffering pain[] because of a hydrocele." (*Id.*) On an unspecified date, Plaintiff had a second exam with unspecified individuals and was "told that [he] may have cancer." (*Id.*) Plaintiff was "still suffering in pain [and] this new diagnosis was mentally hard for [him] to get his mind around." (*Id.*) Plaintiff alleges that "pain and death was on [his] mind and not being able to see [his] family ever again." (*Id.*)

Then, on an unspecified date, Plaintiff was "sent [to an] off-site hospital," and his right testicle was removed. (*Id.*) Plaintiff alleges that "after the operation, the hospital team said that if [Plaintiff] was brought to the hospital to see a specialist, they could have saved [his] undescended testicle [because] it was only tangled at the cord." (*Id.*)

Plaintiff alleges that he was "misdiagnosed by the healthcare administration at MTU" and that the "reckless diagnoses . . . did not allow for proper diagnosis and treatment." (*Id.*) Plaintiff further claims that the "negligent response and the inadequate diagnosis by the medical staff" gave him unnecessary mental and physical suffering. (*Id.*)

[1] In this opinion, the Court corrects the punctuation, spelling, grammar, and capitalization in quotations from Plaintiff's filings.

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise Eighth Amendment claims relating to Plaintiff's medical treatment. (*See id.*) Plaintiff seeks monetary damages. (*Id.*, PageID.4.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Statute of Limitations**

In this action, Plaintiff asserts that Defendants MDOC Healthcare Services and Unknown Party #1, a doctor at MTU, provided inadequate medical care to Plaintiff on or around May 23, 2022, more than three years ago. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.

Plaintiff's complaint appears to be untimely. However, Plaintiff does not assert the dates he had a second exam at MTU or went to the off-site hospital. Further, the statute of limitations for § 1983 claims may be tolled for the period during which a plaintiff's available state administrative remedies were being exhausted, and Plaintiff does not assert whether he exhausted his administrative remedies and what time, if any, was spent on that process. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). The Court is therefore unable to determine when Plaintiff's claims accrued because it is not clear when Plaintiff had reason to know of the "harms" done to him at the time they occurred or when he exhausted his administrative remedies.

Although a claim barred by the statute of limitations is subject to dismissal for failure to state a claim, *see Jones v. Bock*, 549 U.S. 199, 215 (2007), in deference to Plaintiff's *pro se* status, the Court will address Plaintiff's claims on the merits below.

**B. Defendant MDOC Healthcare**

Plaintiff names MDOC Healthcare as a Defendant and refers to "medical staff," "MDOC health service," and "MDOC Administration" throughout his complaint. (*See* Compl., ECF No. 1, PageID.1, 3.) As an initial matter, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, the State of Michigan, acting through the MDOC and MDOC Healthcare, is not a "person" within the meaning of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person."). Accordingly, for this reason alone, Plaintiff fails to state any claim against Defendant MDOC Healthcare upon which relief may be granted.

Moreover, as to Plaintiff's references to "healthcare administration," "medical staff," and "MDOC health service" in his complaint, "[s]ummary reference to a single, five-headed 'Defendants' [or medical staff or health service] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Here, Plaintiff's general references to "healthcare administration," "medical staff," and "MDOC health service," are insufficient to

show that any individuals, let alone the named Defendants, were personally involved in the actions that Plaintiff attributes to these groups of people.

Accordingly, for these reasons, Plaintiff fails to state any claim against Defendant MDOC Healthcare upon which relief may be granted.

**C. Defendant Unknown Party #1**

Plaintiff alleges that Defendant Unknown Party #1, a doctor at MTU, violated his Eighth Amendment rights as related to Defendant Unknown Party #1's examinations and treatment of Plaintiff's pain in his groin area. (*See* Compl., ECF No. 1, PageID.3.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with

knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir.

2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410, 411 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must show that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

**1. Objective Component**

Plaintiff alleges that he had "serious pains in [his] groin area," and could not "stand up straight or sit without deep pains." (Compl., ECF No. 1, PageID.3.) He further alleges that his right testicle was later removed. (*Id.*) At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has alleged sufficient facts to show a serious medical condition.

**2. Subjective Component**

Turning to the subjective component—i.e., the requirement that a plaintiff alleges sufficient facts to show that "the official [or medical provider was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official or medical provider "also dr[e]w the inference," *Farmer*, 511 U.S. at 837—the Court addresses Plaintiff's allegations against Defendant Unknown Party #1 below.

Plaintiff alleges that on May 23, 2022, Plaintiff was examined by MTU's "medical doctor and nurses," and was informed that he "was suffering pain[] because of a hydrocele." (Compl.,

ECF No. 1, PageID.3.) Thereafter, on an unspecified date, Plaintiff had a second exam with unspecified individuals and was "told that [he] may have cancer." (*Id.*)

As an initial matter, although Plaintiff describes Defendant Unknown Party #1 as a doctor at MTU, it is not clear from Plaintiff's complaint whether his allegation about being examined by MTU's "medical doctor and nurses" on May 23, 2022, is a reference Defendant Unknown Party #1. Regardless, even assuming, without deciding, that Plaintiff intended to refer to Defendant Unknown Party #1, Plaintiff's only allegation regarding this Defendant is that Defendant examined Plaintiff on May 23, 2022, and that at that time, Plaintiff was informed that he "was suffering pain[] because of a hydrocele." (Compl., ECF No. 1, PageID.3.) Plaintiff's allegation does not show that Defendant Unknown Party #1 disregarded a risk of harm to Plaintiff; to the contrary, Plaintiff's own allegation shows that Defendant Unknown Party #1 provided medical care to Plaintiff and made an initial diagnosis regarding Plaintiff's pain.

In another part of Plaintiff's complaint, Plaintiff claims that he "was misdiagnosed by the healthcare administration at []MTU[]." (*Id.*, PageID.3.) It is not clear that Plaintiff intended to claim that Defendant Unknown Party #1 misdiagnosed him; however, again, the Court assumes, without deciding, that Plaintiff intended to do so. Reading the complaint in the light most favorable to Plaintiff, Plaintiff claims that Defendant Unknown Party #1 violated his rights under the Eighth Amendment because this Defendant misdiagnosed Plaintiff at MTU, which "did not allow for proper diagnosis and treatment," and led to the removal of Plaintiff's testicle. (*See id.*) However, as explained below, Plaintiff's allegations fail to show that Defendant Unknown Party #1 was deliberately indifferent to his medical needs. On May 23, 2022, Defendant Unknown Party #1 examined Plaintiff and provided Plaintiff with a diagnosis at that examination. (*Id.*) Plaintiff alleges that he had a second exam with an unspecified individual on an unspecified date and

Plaintiff was told that he "may have cancer" by an unspecified individual or individuals. (*Id.*) Plaintiff's allegations do not attribute the possible cancer diagnosis to Defendant Unknown Party #1 but, assuming, without deciding, that Defendant Unknown Party #1 provided this diagnosis, Plaintiff was subsequently referred to an off-site hospital for further examinations and treatment. (*See id.*) Plaintiff's complaint does not allege any timeframe between Defendant Unknown Party #1's initial and subsequent diagnoses, nor does Plaintiff allege the length of time between his diagnoses and referral to the off-site hospital. Plaintiff's conclusory statement that if he had been sent to the hospital sooner "they could have saved [his] undescended testicle," is speculative and amounts to faulting Defendant Unknown Party #1 for "fail[ing] to provide more or better treatment, not indifference to his condition." *Mitchell*, 553 F. App'x at 605.

Further, Plaintiff characterizes the medical care he received at MTU as "negligent," and "inadequate." (*See* Compl., ECF No. 1, PageID.3.) However, negligence in identifying or treating a medical need cannot be the basis for an Eighth Amendment violation. *See Farmer*, 511 U.S. at 835; *Comstock*, 273 F.3d at 703. Plaintiff's complaints regarding the course of treatment he received from Defendant Unknown Party #1, which involved two examinations and a referral to an off-site hospital, are therefore insufficient to state a deliberate indifference claim. *See Darrah*, 865 F.3d at 372; *see also Vinson v. Mich. Dep't of Corr.*, 788 F. App'x 312, 317–318 (6th Cir. 2019). Plaintiff asks the Court to second guess Defendant Unknown Party #1's medical judgments, "as opposed to enforce the cruel-and-unusual-punishments ban in the Eighth Amendment." *Mitchell*, 553 F. App'x at 605. Therefore, because Plaintiff fails to show that Defendant Unknown Party #1's actions constituted deliberate indifference, Plaintiff fails to state an Eighth Amendment claim against Defendant Unknown Party #1.

In summary, for the reasons set forth above, Plaintiff's Eighth Amendment claims against Defendant Unknown Party #1 will be dismissed for failure to state a claim.

### D. Defendant Unknown Party #2

Defendant Unknown Party #2 is described by Plaintiff as the doctor at the "hospital where [Plaintiff] had a surgical removal." (Compl., ECF No. 1, PageID.2.) Plaintiff later describes the place of his surgery as an "off-site hospital." (*Id*., PageID.3.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West*, 487 U.S. at 48; *Street*, 102 F.3d at 814; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

Plaintiff has not identified the hospital that employs Defendant Unknown Party #2, nor has Plaintiff presented any allegations to show that the hospital's and doctor's conduct could be fairly attributed to the State. The fact that the unnamed hospital may receive public funding and that both the hospital and the doctor are licensed by the state does not render them "state actors" for purposes of § 1983. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (finding that a nonprofit, privately operated school's receipt of public funds, did not make its employee discharge decisions acts of state subject to suit under federal statute governing civil action for deprivation of rights); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (finding that the allegation that a hospital and social worker were subject to state licensing was insufficient to support finding that defendants were acting under color of state law); *Adams v. Vandemark*, 855 F.2d 312, 315–16 (6th Cir. 1988) (finding that a nonprofit corporation that was funded almost entirely by public sources, and was subject to state regulation is insufficient to make private entity's decision to discharge employees attributable to state for purpose of § 1983 action). Further, even if Defendant Unknown Party #2 treated Plaintiff at the state's request and expense, Defendant Unknown Party #2 did not thereby

become a state actor. *See Rendell-Baker*, 457 U.S. at 841 (stating, "Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *Bell v. Mgmt. and Training Corp.*, 122 F. App'x 219, 223 (6th Cir. 2005) (finding that a private company operating state corrections facilities is not a state actor).

Moreover, even if Defendant Unknown Party #2's actions could be attributed to the State, Plaintiff fails to show that Defendant Unknown Party #2 acted with deliberate indifference to Plaintiff's medical needs. Instead, Plaintiff's allegations show that he received medical treatment, including surgery, at the outside hospital. (*See* Compl., ECF No. 1, PageID.3.) To the extent that Plaintiff disagrees with the treatment that he received, as discussed above, that would be insufficient to state an Eighth Amendment claim against Defendant Unknown Party #2. *See Darrah*, 865 F.3d at 372.

Accordingly, Plaintiff's Eighth Amendment claims against Defendant Unknown Party #2 will be dismissed for failure to state a claim.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might

raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: August 21, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge